Dickinson, J., delivered the opinion of the court. (At January term, 1842.) There is a preliminary point in this case, which we will first notice and decide. It is true that a party, by moving fora new trial, waives his exceptions taken at the hearing; and, should his motion be adjudged against him, he cannot again resort to his exceptions. And so this point has been expressly ruled in this court, in the case of Danley vs. Edward's heirs. And it is certainly true that, if upon his motion for a new trial, he either omits or fails specifically to point out the facts or evidence upon which the principles of law have arisen and been decided against him, the presumption will be, that his motion was properly overruled. And it ,cannot be denied that, if, in his motion for a new trial, he does nfot show that the proof set out in his bill of exceptions was had aijid taken upon the trial, such statement can form no part of the record, nor will it be considered in this court. These, principles aré obvious and plain, and their application, cannot be difficult to any state of case, that may arise. But should the- party, in his exceptions to the opinion of the court in overruling his motion for a ijiew trial, set out the points of law and evidence that the court pas;sed upon, and should the points clearly appear to have been taken at and during the trial, the bill of exceptions unquestionably makes them a part of the record. It matters not when the motion, for!, a: new-trial was decided, so that the exceptions to the opinion of the, court overruling it, clearly show that the questions of law and of fact were ruled erroneously against him upon the trial. In this case the bill of exceptions unquestionably proves that the; court below decided the matters excepted to against them upon, the trial, and the record contains the evidence upon which the de.t-cisión was founded. We are not therefore at liberty to disregard the questions decided by the court below. And should that decision seriously prejudice the rights of.the party complaining, this, court will direct a new trial to be awarded, that justice be render-, ed in the premises. It cannot be denied that our statutes place joint and several obligations upon the same ground, so far as the. remedy is concerned. The party has his election to- proceed in one of two ways. He may sue one or both of the obligors separately, or he may sue them jointly. This is a departure from the: principle of the common law; for there, joint and several obligations stand upon a different footing. In giving the party two remedies, surely the statute did not intend to allow him the privilege,, after having made his election, to join these two remedies together; for that would show, not that he was entitled to two distinct remedies, which he should prosecute according to the directions of the statute, but that he might proceed in a compound way, wholly different from the rule pointed out by either mode. This ce- •, ,ily would not be following the statute, but would be creating ; -ew remedy distinct from its provisions. The party plaintiff, i' ing two or more joint and several obligors, may discontinue . i one, and take judgment as to the other, where there has been n - ’-vice of process, or where the service has not been in-time to ! «'-weed to trial at the return term, or he may continue 'his cause mil have service executed at the next term. All these provision, unquestionably given for the purpose of facilitating the remen-> But the statute is silent where the party has had service f c> uted upon both joint obligors, in time for the trial, or where h. . have voluntarily come brand pleaded, separately or jointl’ , the action. ' There is no statutory regulation in reference o such cases; consequently this court must determine the rub- by adjudged precedents, if any can be found, or from analogy t<> ' 'nr general principles of practice in like cases. ’’ vq have looked into the authorities upon the point, and find no direct decision bearing upon it. It is true, in the case of Minor and another vs. Mechanics’ Bank of Alexandria, 1 Peter’s 75, the court held that, after judgment, a, nolle prosequi might be entered where there are several joint obligors, all of whom had been sued, and the defendants had severed in their pleadings on the trial at issue. But there it appears, there was no opposition made to the proceeding. There wasno motion in arrest of judgment, orforapost-ponement until the trial of the issues of the principal might be had. In Hartrees vs. Thompson, 5 J. R. 160, an action was brought against three, upon a joint and several promissory note, and there was a joint plea of the general issue, and the infancy of the defendants set up on the trial, and it w-as no ground for a non-suit, but the plaintiff, upon verdict found in his favor against two defendants, was allowed to take judgment against them, and enter a nolle prosequi as to the infant. The same principle was held in Woodward vs. Marshall, 1 Pickering, 500. They went in both cases, 'not only in personal discharge, but proceeded upon a matter which established an original defect in a joint contract. All these cases proceed upon the ground that the question is a matter of practice, to be decided upon considerations of policy and convenience, rather than of principie. The Supreme Court of the United States, in the case first quoted, seem to have adopted the same rule, and say that, where the defendants sever in their pleadings, a nolle prosequi ought to be allowed. We are not aware of a, single case, in which a party has been allowed to sever upon a’ joint contract, where the defendants pleaded jointly to the action and both opposed a motion for leave to enter a( discontinuance as to one. The party bringing the suit, is presumed to know* his own case, and to proceed in a manner most conducive to the enforcement of his rights; and it would certainly, then, be improper to permit him to select, in any stage of the proceedings, to discontinue as to one, where he thought proper to join both in the action, and then wait until they should plead jointly, and until the proof showed there was no joint obligation upon which he would have a right to recover. To indulge him in. such license would certainly be introducing much irregularity in- practice, which is generally attended, not only with inconvenience, but with considerable injury, in the administration of justice. In the present case, the plaintiff in error, as well as his co-defendant in the court below, objected to the discontinuance, and it wa§ not entered until after the proof had been heard on the issue that the jury was .sworn to try, and the arguments of the respective counsel closed. The plaintiffs below sought to charge the defendants upon their joint liability upon their obligation as partners and practising at--torneys at law. If in the management of the business entrusted to their care, they were guilty of culpable negligence or malfeasance in their profession, it cannot be denied that they were both jointly liable on their undertaking. The party, seeking to hold them responsible for their joint liability, certainly ought not to be permitted, when the 'proof showed that one of them was guilty of no malfeasance in his profession, and that he had dissolved partnership with his co-defendant, before any such act rendering the latter responsible was committed, to discontinue as to him, and to proceed alone against the other. His declaration charged them both to be guilty, the law holds him to the proof, and the charge is certainly not supported, if he only proves that (me is guilty. There is then a fatal variance between the allegation and the proof. The allegation charges a joint liability, the proof establishes a separate liability. He cannot hold one of the defendants responsible upon the indebitatus count, because he has thought proper to put his liability upon his joint undertaking, and the law holds him to the proof. Besides, what would be the effect of the judgment in such case? Is the partner, in whose favor the discontinuance is entered, discharged from all liability to his co-partner, on their joint undertaking, when they have elected to be tried upon the joint issue formed? Had not the plaintiff in error a right to insist that, as his co-defendant pleaded jointly with him, he should be held to his j’oint obligation? And that it should not be in the power of the party suing, who, by his own act, had elected to place them in the condition they were, to enable one of them to escape from the legal liability of his act, and charge the whole responsibility upon the other? It is said that, as the plaintiff below had a right to sue separately, there could be no injury resulting from a discontinuance. The answer to this is, the statute gives no authority to discontinue, but expressly authorizes a separate suit. But he, having thought it advisable to sue jointly, must be held to his election, and the reason of the rule will be found in this, that at common law in trespass or torts all might be sued jointly or separately, and a nolle prosequi could be entered befofe or after judgment, but such was not the case in ordinary civil actions upon promises or contracts. In the case of Fuller vs. Van Schaick, 18 Wend. 547, the action was against the maker and the other two defendants, as the endorsers of a promissory note. The declaration had but one count. The plaintiff discontinued as to the two endorsers and proceeded against Van Schaick only, which was objected to by him as operating a discontinuance of the action. The court however sustained the entry of discontinuance as to the endorsers, and said “There is no doubt that such would, in general, be the consequence in actions arising ex contractu, though it is otherwise in actions of tort. And in actions upon contracts, if one of several defendants plead some matter which goes only to his personal discharge, the plaintiff may enter a nolle prosequi as to him, and continue the action against the others.” They expressly hold the doctrine that, “if several persons be bound by a joint and several contract, and the plaintiff bring a joint action against all the parties, he must recover against all or none.” For considering it himself a joint contract, he must abide the consequences; and this we believe to be, a well settled doctrine, that the plaintiff must abide by his elec-, tion, unless aided by statute, which is not the case in this instance. Sabman vs. Smith, 1 Saund. 207, n. 2. 1 Wilson 89. Dyer vs. Johnson, 1 Howard 474. Dugan vs. United States, 3 Whea. 172. Our statute having changed the rule upon the subject, and having afforded two remedies, it is proper that they should be pursued, as pointed out in the act, because they can receive no aid or assistance from general principles. If this reasoning be correct, then, the circuit court erred in entering the discontinuance. It is clear that the judgment is erroneous upon another point: that thp present plaintiff in error is not liable for the costs of the whole action. He was only liable for his own costs, and not for that of his co-defendant. The judgment of the circuit court must therefore be reversed and the case remanded to the court from whence it came, for further and other proceedings to be had therein, in conformity with law and this opinion. Note. — The above opinion was pronounced at the January term 1842. - At a subsequent term of the court, on petition for re-hearing, it was set aside, and the judgment of the circuit court affirmed. At the July term, 1844, the plaintiff in error filed a motion to certify to the circuit court the first opinion as the judgment,of this court, which was disposed of, by the following opinion, at the July term, 1845, from which the history of the case in this court will fully appear. Oedham, J., delivered the opinion of the court. (At July Term, 1845, on motion.) ■ The attitude which this case occupies, is novel and extraordinary in its character, and the question, thereby presented for .our determination, is of great magnitude and importance, involving the power of this court over its judgments and records. And in consideration of the importance of the question, ás well as the fact, that an entire change has taken place in the persons composing the court, since the presentation of the questiqn, we feel considerable hesitation in approaching the subject. During the term at which judgment is rendered, the power of .every court of record to set aside, vacate and annul its judgments and orders, is undoubted. This is a power of daily exercise by the courts, in the granting of new trials, arrests of judgment and in other proceedings of like character. Its existence and propriety cannot be questioned; it is based upon the substantial principles of right and wrong, to be exercised for the prevention of error and injury, and for the furtherance of justice. But the power of a court to vacate or annul its judgments and decrees, rendered at a previous term, presents a question of more serious doubt, as well as of graver import. It is not pretended that the circuit courts or other inferior tribunals possess this power, but we believe it is conceded that their judgments, being rendered and the term having-expired, the power of the court over them is forever gone, except perhaps so far as may be necessary to supply omissions through mistake or neglect, by nunc pro lunc orders. The judgment, at the expiration of the term, becomes conclusive upon the parties, never to be reached by the court for the purposes of re-hearing or reversal, but can only be re-examined in an appellate tribunal, and only upon the facts presented by the record. Such is the view heretofore entertained by this court in Smith vs. Dudley, 2 Ark. R. 66, and Walker vs. Jefferson, 5 Ark. R. 23. In these cases it is held, “that when judgment has been pronounced, and the term at which it has been given has finally expired, neither the court nor the parties to the record have any longer any control over it.” What reasons can be assigned, which would justify the exercise ¡of the power by the Supreme Court, which is so clearly excluded from the circuit court, we are at a loss to determine. None can be assigned in the one case, which would not be equally applicable in the other. Public policy, as well as public liberty, require that the powers of every department of the'government should be circumscribed and limited; and this, we conceive to be equally necessary, as well to the time and manner in which, as to the subject matter over which, they shall be exercised. To concede that this court can, at any term subsequent to the one at which a final judgment may be rendered, order the judgment to be annulled and vacated, and grant a new hearing, and again render judgment differing from the one originally pronounced, would be to concede a .power most gigantic and dangerous. In such case, the determination of this court over a question," no matter what lapse of time ¡may have intervened since the rendition of the judgment, would not be conclusive upon the rights involved, or afford security to the parties litigant. No man could tell when the court might not see .fit to review an opinion pronounced in his favor, and in conse•quence of a change of opinion, or a change of judges upon the bench, reverse the opinion originally.rendered and give judgment against him. For it is clear that if we have a right to open a judgment solemnly pronounced and enrolled at the last term of the ¡court, and which upon the adjournment of the term was left unre-called, and in full' force, the right and power attaches to every case determined by this court since its first organization. The proposition thus presented, cannot be controverted, and is startling in its character; a more extensive and dangerous powef over the rights of the citizen .eould scarcely be claimed by any tribunal,, however absolute and unlimited in its prerogative. In such case litigation would be endless, parties litigant would! be kept forever in fear and trepidation, lest their judgments should .¡be set aside, their causes re-considered, and decided against them, ’The records of the court, which should be held inviolable, the sol-. ,emn judgments and decrees therein enrolled, would afford no se-. -curity to the parties, or evidence that litigation had ended. The .only security would reside in the breasts of the judges upon the b.ench, dependent upon their discretion and integrity. There should •be a time for litigation to have an end; there should be a time when a party may claim the benefits, to which a decision of this ¡court entitles him; there should be a period to the power of the court over its records, and when its judgments and decrees shall become íixéd, absolute and unalterable. No time seems so fit and proper, so conformable to precedent, principle, reason and common sense, as the end of the term, at which the judgment is rendered. This question was fully argued and determined by the court in The Real Estate Bank vs. Rawdon et al., 5 Ark. R. 576, and in the reasoning of the majority of the court upon this point, we fully concur. It would seem to us then, both upon principle and precedent, that when the Supreme Court once adjudicates a question, pronounces its opinion and renders judgment thereon, and the term elapses, leaving the judgment in full.force, the cause passes forever beyond the power and jurisdiction of the court, except it be again brought up by appeal or otherwise, after another trial in the inferior tribunal; and that at the end of the term, the party, in whose favor the judgment has been rendered, is entitled to have the same certified down to the lower court, where he can have the full benefit of it. Such being our view of the law, we will apply the principle just determined to the case before us. The judgment was rendered at the January term, 1842, reversing the judgment of the circuit court, and on the last day of the term, the defendants in error moved the court for leave to file a petition for re-hearing, and leave was granted without specifying the time, within which the petition should be filed. Under the leave thus granted, the petition was not filed until the second term thereafter; at the January term, 1843, the judgment was set aside, and the cause ordered to stand for re-hearing. Here was a judgment held up, for twelve months, upon the mere motion of one of the parties, without any order of the court whatever, in any wise, suspending or impairing its validity; for twelve months longer it is held up, upon the petition of the party for a re-hearing, without any order of the court affecting the judgment; and at the January term, 1844, the court proceeded to a hearing of the petition, and set aside and annulled one of its .own solemn judgments, rendered two years previous; and at the July term thereafter, reversed the opinion and judgment originally pronounced by them, and affirmed the judgment of the circuit court. These facts show how extensive and indefinite is the power claimed, and, also, afford an argument unanswerable and conclusive, against its existence, and the propriety of its exercise. The filing of a motion for leave to present a petition for a re-hearing, or the granting of that leave by the court, did not vacate, annul or suspend the judgment rendered in the cause; nor was such the effect produced by filing the petition, but at the end of the term at which it was pronounced, the judgment became absolute and conclusive upon the parties. It was no longer in fieri and under the control of the court, but became a settled and absolute adjudication. Such being the case we are constrained to regard the subsequent proceedings of the court as extra-judicial, mere nullities, without the verity and force of judicial authority. The motion of the plaintiff in error must be sustained, that the judgment rendered at the January term, 1842, be certified to the circuit court as the judgment of this court, and ordered to be carried into effect. Note — Judge Cross did not arrive and take his seat on the Bench, as one of the judges of this court, until the cases of this term hereinbefore reported had been decided. He was present during the balance of the term.